# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| Aleida Johnson, f/k/a Aleida Hill, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:14-CV-00322 |
| Midland Funding, LLC, | ) |
|     Defendant. | ) |

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT

In her response to Midland's Motion to Dismiss, Johnson paints Midland as advocating for a return to the status quo prior to the Eleventh Circuit's recent decision in *Crawford v. LVNV Funding, LLC*, when courts uniformly had held that the filing of proofs of claim in bankruptcy is "not the sort of debt-collection activity that the FDCPA regulates." 758 F.3d 1254, 1261 (11th Cir. 2014). In truth, Midland's motion *begins with* the Eleventh Circuit's holding in *Crawford*—that "the broad prohibitions of § 1692e . . . and § 1692f," *id.*, may conceivably encompass conduct within the bankruptcy process—and raises two questions that proceed from that premise:

1. Whether applying the FDCPA's "broad prohibitions" to conduct expressly permitted by the Bankruptcy Code results in an "irreconcilable conflict" between the two bodies of law.

2. Whether Johnson's complaint states a claim under well-settled application of the FDCPA, even outside the bankruptcy context.

The first question is one that the Eleventh Circuit "decline[d] to weigh in on." *Crawford*, 758 F.3d at 1262, n.7. In fact, it was *Crawford* that **created** the conflict presented by Johnson's claim. And notwithstanding Johnson's suggestion to the contrary, *Crawford* logically could not have resolved the second question—whether Johnson's complaint fails to state a claim under the FDCPA for reasons not addressed by the Eleventh Circuit's decision. Rather than take issue with Midland's answers to either question, however, Johnson rests her response almost entirely upon a series of misunderstandings or mischaracterizations not only of Midland's arguments, but also of the actual holding of *Crawford*.

For example, Johnson faults Midland for supposedly asking this Court to apply a "categorical approach" in determining whether her FDCPA claim is precluded by the Bankruptcy Code; whereas, in truth, Midland's motion to dismiss clearly advocates for the same "conflict-specific" analysis urged by Johnson. Furthermore, Johnson also fails to acknowledge that, even under the conflict-specific approach, courts have concluded that "in this specific factual situation, application of the FDCPA is precluded by the Bankruptcy Code."[1]

And while "it's bad enough picking on a straw man,"[2] Johnson also cannot simply hide behind *Crawford* to suggest that she alleges a *per se* violation of the

---

[1] *B-Real, LLC v. Rogers*, 405 B.R. 428, 434 (M.D. La. 2009) (quotation omitted).

[2] *The Wizard of Oz* (Metro-Goldwyn-Mayer 1939).

FDCPA. Contrary to Johnson's characterization, *Crawford* did not "unequivocally h[old] that [Midland's] practice constitutes a 'false, deceptive, or unfair' debt-collection practice prohibited by and subject to the [FDCPA]." (Doc. 21, at 2). Instead, the Eleventh Circuit merely held that the lower courts had erred as a matter of law in concluding that "creditors who file proofs of claim are not engaging in the sort of debt-collection activity that the FDCPA regulates."[3] Thus, even after *Crawford*, and even if Johnson's FDCPA claim were not precluded by the Bankruptcy Code, Midland's proof of claim was objectively not misleading and was not an unfair or unconscionable means of attempting to collect the underlying debt. Either way, Johnson's complaint should be dismissed with prejudice.

**I. Johnson's purported FDCPA claim presents an irreconcilable conflict with the Bankruptcy Code's claims-allowance procedures.**

**A. Application of the FDCPA to actions within bankruptcy creates a conflict with the Bankruptcy Code.**

In addition to relying largely on a mischaracterization of Midland's argument regarding the appropriate framework for this Court's analysis,[4] Johnson

---

[3] *Crawford v. LVNV Funding, LLC*, No.12-CV-701, 2013 WL 1947616, at *2 (M.D. Ala. May 9, 2013) *vacated,* 758 F.3d 1254 (11th Cir. 2014).

[4] *Compare* (Doc. 21, at 8–9) ("Midland relies on a Ninth Circuit decision in *Walls v. Wells Fargo Bank, N.A.*, [2]76 F.[3d] 502 (9th Cir. 2002), . . . [for the proposition that] the Bankruptcy Code is the debtor's sole recourse for actions that are taken by a debt collector[] in connection with a bankruptcy, even when those action[s] otherwise violate the FDCPA."), *with* (Doc. 17, at 10–11) ("The proper inquiry is whether the FDCPA claim raises a direct conflict

3

also takes issue with Midland's proffered distinction "between actions taken inside and actions taken outside a bankruptcy." (Doc. 21, at 11). However, she acknowledges that Judge Mahoney's decision in *In re Peed* is representative of "a body of lower court decisions" (Doc. 21, at 11) that "have made the same distinction with regard to actions taken pursuant to the Code and Rules versus actions taken outside the bankruptcy system." *In re Peed*, No. 12-AP-00028, 2012 WL 1999485, at *4 (Bankr. S.D. Ala. June 4, 2012).[5] And based on the very same "inside vs. outside" distinction advocated by Midland and derided by Johnson, courts have found that "[i]t is difficult . . . to understand how a procedure outlined by the Bankruptcy Code could possibly form the basis of a violation under the FDCPA." *Id.* at *4 (quoting *Simmons v. Roundup Funding, LLC*, 622 F.3d 93 (2d Cir. 2010)).

Nonetheless, Johnson insists that drawing such a line for purposes of determining whether her FDCPA claim is precluded by the Bankruptcy Code "clashes not only with the Seventh Circuit['s] [conflict-specific analysis] but . . . also a large body of Supreme Court precedent." (Doc. 21, at 13). While she chides Midland for "fail[ing] to mention the recent U.S. Supreme Court decision in

---

between the Code or Rules and the FDCPA, or whether both can be enforced.") (alterations omitted) (quoting *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 274 (3d Cir. 2013)).

[5] *See also Bacelli v. MFP, Inc.*, 729 F.Supp .2d 1328, 1336–37 (M.D. Fla. 2010); *In re McMillen,* 2010 WL 2025610, at *3–*4 (Bankr. N.D. Ga. February 25, 2010).

4

*POM Wonderful LLC v. Coca Cola*" (*id.* at 7), Johnson herself ignores the Supreme Court's decision in *Kokoszka v. Belford,* 417 U.S. 642 (1974).[6]

In *Belford*, the Supreme Court determined that the wage garnishment restrictions in the Consumer Credit Protection Act ("CCPA") were precluded by the Bankruptcy Code from operating within the debtor's bankruptcy case. The Court began by noting that "Congress did not enact the Consumer Credit Protection Act in a vacuum," and that "[t]he drafters of the statute were well aware that the provisions and the purposes of the Bankruptcy Act and the new legislation would have to coexist." *Id.* "Indeed, the Consumer Credit Protection Act"—which was amended in 1977 to include the FDCPA—"explicitly rests on both the bankruptcy and commerce powers of the Congress," and the Court concluded that it "must therefore take into consideration the language and purpose of both the Bankruptcy Act and the Consumer Credit Protection Act." *Id.*

As the Court explained, "Congress' concern [in enacting the CCPA] was not the administration of a bankrupt's estate but . . . [with] eliminating 'an essential element in the predatory extension of credit . . . and a consequent increase in personal bankruptcies." *Belford*, 417 U.S. at 650. Thus, the Court determined that "the Consumer Credit Protection Act sought to prevent consumers from entering

---

[6] Incidentally, Johnson also admits that the Supreme Court's decision in *POM Wonderful* employed "precisely the approach adopted by the *Randolph* court" (*i.e.*, the same "conflict-specific" analysis urged by Midland in its motion to dismiss). (Doc. 21, at 16).

5

bankruptcy in the first place." *Id.* at 651. On the other hand, "if, despite its protection, bankruptcy did occur, the debtor's protection and remedy remained under the Bankruptcy Act." *Id.*

"Like with the wage garnishment provisions of the Consumer Credit Protection Act, a key function of the FDCPA . . . was to eliminate practices that 'contribute to the number of personal bankruptcies.'"[7] And, like the CCPA, nothing in the FDCPA "demonstrates even the slightest intent on the part of Congress to interfere with the intricate workings of the bankruptcy system." *Id.* Moreover, even when it amended the Bankruptcy Code in 1978, 1984, 1994, and 2005, or when it amended the FDCPA in 2010, Congress clearly saw no reason to extend the FDCPA's application to the bankruptcy context. Nor did Congress deem it necessary to make clear that the FDCPA *does not* extend to conduct within the bankruptcy process, which is unsurprising in light of the fact that it was legislating upon the background of a mounting body of authority—over 150 decisions to date—in which courts have found that the FDCPA does not apply to creditors' time-barred proofs of claims. And as the Eleventh Circuit has admonished, Congress's silence speaks volumes, as "[s]ilent abrogation of judicially created concepts is particularly disfavored when construing the

---

[7] *Baldwin v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, No. 98-CV-4280, 1999 WL 284788, at *4 (N.D. Ill. Apr. 26, 1999) (citing 15 U.S.C. § 1692(a)) ("Abusive debt collection practices contribute to the number of personal bankruptcies . . . .").

6

Bankruptcy Code." *In re Colortex Industries, Inc.*, 19 F.3d 1371, 1374 (11th Cir. 1994).[8]

Thus, "application of the FDCPA to bankruptcy proceedings would be inappropriate absent explicit statutory language permitting such application" because "a clear statement rule applies to statutory provisions which would 'erode past bankruptcy practice.'" *Baldwin*, 1999 WL 284788, at *4. And "it is beyond cavil that past bankruptcy practice, as well as explicit Bankruptcy Code provisions, have left the remedy for fraudulent and otherwise defective proofs of claim to the Bankruptcy Code." *Id.* Accordingly, "[t]he holding and reasoning of *Kokoszka* [*v. Belford*] impel a finding that an FDCPA claim may not be premised on proofs of claim filed as part of a bankruptcy proceeding." *Id.*

### B. Johnson's purported FDCPA claim presents an irreconcilable conflict with Midland's rights under the Bankruptcy Code.

Even though "[i]t is difficult . . . to understand how a procedure outlined by the Bankruptcy Code could possibly form the basis of a violation under the FDCPA," *In re Peed*, 2012 WL 1999485, at *4, Johnson relies on her *ipse dixit* assurances that "[t]here is no conflict between the Bankruptcy Code and the

---

[8] "While the FDCPA is not actually part of the Bankruptcy Code, . . . this clear statement rule is still relevant in interpreting the Bankruptcy Code," and, as noted above, "the FDCPA is part of the Consumer Credit Protection Act, which was passed pursuant to both the bankruptcy and commerce powers." *Baldwin*, 1999 WL 284788, at *3 n.2 (citing *Belford*, 417 U.S. at 650).

application of the FDCPA to filing a time-barred proof of claim because there is no right to file a time-barred claim" (Doc. 21 at 17).

Yet, in setting up her supposedly "apples and oranges" distinction between Midland's rights under the Bankruptcy Code and her purported claim under the FDCPA, Johnson ignores the Bankruptcy Code's definition of "claim"—which "includes any right to payment, whether in law or in equity," and "is to be given the 'broadest possible definition'"[9]—in favor of Black's definition of a "right" as "a legally enforceable claim." (Doc. 21 at 17) (quoting Black's Law Dictionary (5th Ed. 1979)). Thus, under Johnson's circular and self-serving definition, no creditor (much less a debt collector) has a "right" to file a proof of claim for a time-barred debt since, by definition, such a "claim" would be "unenforceable."

But that is not the law, as Midland plainly noted in its motion to dismiss. (Doc. 17, at 7–8). Putting aside Johnson's attempt at obfuscation, "Congress established that the existence of *a right to payment* is more extensive than the existence of *a cause of action* that entitles an entity to bring suit." *In re Keeler*, 440 B.R. 354, 362 (Bankr. E.D. Pa. 2009) (citation omitted; emphases added). Likewise, under Alabama law, "[w]hen the statute of limitations expires, . . . it extinguishes the remedy rather than *the right*." *Ex parte HealthSouth Corp.*, 974

---

[9] *In re Simpson*, No. 08-AP-00137, 2008 WL 4216317, at *2 (Bankr. N.D. Ala. Aug. 29, 2008) (citing 11 U.S.C. § 101(5)) (quoting *Johnson v. Home State Bank,* 501 U.S. 778, 83 (1991)).

8

So. 2d 288, 296 (Ala. 2007) (emphasis added; quotation omitted). Thus, "numerous courts have upheld ***the right*** of an entity to file a proof of claim, ***even if that claim is clearly barred by the applicable statute of limitations***." *In re Keeler*, 440 B.R. at 363 (emphases added). And "[u]ntil the Bankruptcy Code is amended (for example, by adding a provision in section 501 requiring creditors to have a good faith belief in the allowability of their claims), or the procedural rules modified to render such claims invalid, ***creditors such as [Midland] are entitled to file proofs of claim even for stale debts***." *Id.* at 368 (emphasis added) (citing *In re Chaussee*, 399 B.R. 225, 240 n.16 (B.A.P. 9th Cir. 2008)).[10]

Therein lies the irreconcilable conflict that Johnson fails to apprehend: that "application of the FDCPA to bankruptcy proofs of claim would undermine the central purpose of the Bankruptcy Code, namely, to adjudicate and conciliate all competing claims to a debtor's property in one forum and one proceeding." *Baldwin*, 1999 WL 284788, at *5. As the *Baldwin* court noted, "[p]ermitting debtors to premise FDCPA actions on proofs of claim filed in bankruptcy

---

[10] *See also B-Real, LLC*, 405 B.R. at 432 ("[T]he Bankruptcy Code and applicable jurisprudence allow a creditor to file a proof of claim on a debt even though it may be later determined to be 'unenforceable.' One of the reasons Bankruptcy Courts have deemed a debt to be unenforceable is because the debt is determined to be time-barred or prescribed. ***This Court is wary of any ruling that impinges on a creditor's right to follow the procedural provisions of the Bankruptcy Code***.") (emphasis added); *In re Williams*, 392 B.R. 882, 886 (Bankr. M.D. Fla. 2008) ("Here, Asset did not engage in any wrongful conduct by filing a proof of claim. To hold otherwise would undermine t***he rights of creditors in the bankruptcy process***. The ***creditor's right to file a claim is not impacted by whether the statute of limitations had run***, as the debtor must raise the statute of limitations issue as an affirmative defense, and even then the court still must determine whether it has tolled and run.") (emphases added).

proceedings would give rise to two definite risks." *Id.* First, "creditors may be deterred from filing claims, thus defeating the point of bringing all claims together in one proceeding." *Id.* Furthermore, "any deterrence of the filing of claims should come from within the Bankruptcy Code itself," whereas the FDCPA exists to deter debt collectors from pursuing "unenforceable" debts outside bankruptcy (and, as noted above, in order to prevent bankruptcies from occurring in the first place).

Second, if courts were to countenance FDCPA claims such as Johnson's, it "could prompt debtors to ignore the procedural safeguards within the Bankruptcy Code, such as the right to object to proofs of claim . . ., in favor of . . . an FDCPA claim, with its provisions permitting statutory and actual damages and attorney's fees." *Id.*[11] And this "practice of debtors deliberately bypassing the Bankruptcy Code's objection process in favor of alternative litigation would undermine the entire bankruptcy system." *Id.* Thus, Johnson's claim is fundamentally at odds with Midland's ***right*** under the Bankruptcy Code to file a proof of claim for her debt, and Johnson cannot simply wish away that conflict by pretending it doesn't exist.

---

[11] "Indeed," as in *Baldwin*, "it appears that that is precisely what occurred in this case, for the record in the Bankruptcy Court shows that the debtor and his attorney were well aware of the alleged flaws in Defendant's proof of claim but chose not to object to the claim in favor of filing the present case." *Baldwin*, 1999 WL 284788, at *5.

10

"In conclusion, although [Johnson] cite[s] many cases following *Randolph* which allowed a debtor to go forward with a claim under the FDCPA, [she] fail[s] to cite any case in which the alleged FDCPA violation was based solely on a creditor filing a proof of claim on a debt that was later deemed prescribed." *B-Real, LLC*, 405 B.R. at 433. "In contrast, [Midland] cites a number of recent cases in which a cause of action under the FDCPA based on filing a proof of claim on a prescribed debt was deemed precluded by the Bankruptcy Code," *id.*, including (contrary to Johnson's mischaracterization) cases finding conflict under *Randolph*, not *Walls* (*see, e.g.*, Doc. 17, at 14 & *id.* at n.4). Accordingly, "[u]nder these particular circumstances, [Johnson's] claims under the FDCPA are not viable" and must be dismissed. *B-Real, LLC*, 405 B.R. at 434.

**II. Johnson's FDCPA claim also fails as a matter of law to state a claim under either §§ 1692e or 1692f.**

    **A.** *Crawford* **did not hold that time-barred proofs of claims are** *per se* **violations of the FDCPA, as Johnson suggests.**

As noted above, Johnson's response attempts to re-cast both *Crawford*'s holding and Midland's motion to dismiss in order to suggest that Midland's arguments were foreclosed by the Eleventh Circuit's decision. However, just as Congress was not legislating upon a blank slate when it passed the Bankruptcy Code, neither did the Eleventh Circuit have the first word in *Crawford*. Before the case reached the court of appeals, the district court had affirmed the bankruptcy

court's dismissal for failure to state a claim, concluding that "[f]iling a proof of claim is not the same thing as attempting to collect a debt," and, alternatively, that "[e]ven if [the defendants] *were* trying to collect a debt when they filed proofs of claims in [debtors'] bankruptcies, they still did not engage in any behavior that would violate the FDCPA." *Crawford*, 2013 WL 1947616, at *2.

The Eleventh Circuit reversed, holding that the lower courts had erred as a matter of law in concluding that "creditors who file proofs of claim are not engaging in the sort of debt-collection activity that the FDCPA regulates." *Id.*. Thus, contrary to what Johnson claims in her response, the court of appeals did not "unequivocally h[old] that [Midland's] practice constitutes a 'false, deceptive, or unfair' debt-collection practice prohibited by and subject to the [FDCPA]." (Doc. 21, at 2). Nor could it have, since the case was on appeal from the district court's order affirming the bankruptcy court's judgment of dismissal for failure to state a claim. Indeed, "for all its sound and fury," the Eleventh Circuit's sweeping *dicta* in *Crawford* is just that—*dicta*. Ultimately, the court acknowledged as much, concluding its opinion in *Crawford* by "vacat[ing] the district court's dismissal of Crawford's complaint" and mandating that the case be "remand[ed] for further proceedings." *Crawford*, 758 F.3d at 1262.

Johnson, on the other hand, pretends that the Eleventh Circuit made filing an out-of-statute proof of claim a *per se* violation of the FDCPA. But Johnson

12

"misperceives the doctrine of the law of the case," as she essentially "argues that [the appellate] court's reversal of the district court's [dismissal] . . . *necessarily* included a determination by th[e] [appellate] court that there were *no* possible grounds for [dismissal], and that determination is now binding as the law" of the Circuit. *Hester v. Int'l Union of Operating Eng'rs, AFL-CIO*, 941 F.2d 1574, 1581 n.9 (11th Cir. 1991) (emphases in original). As the Eleventh Circuit has explained, "[h]owever, the doctrine does not extend to every issue that could be ever raised in a given litigation but rather is limited . . . only to issues decided expressly or by necessary implication." *Id.* (quotations, citations, and alterations omitted). Thus, "a district court on remand is free to address, as a matter of first impression, those issues not disposed of on appeal." *Id.* (quotation omitted).

In other words, notwithstanding *Crawford*'s holding, LVNV still may challenge the sufficiency of the plaintiff's claim on any basis not addressed by the Eleventh Circuit's decision.[12] And the same is true here. Accordingly, this Court should decide for itself whether Johnson's complaint states a claim under the FDCPA, without regard to Johnson's "hyperbolic" suggestion that any such analysis is foreclosed by *Crawford*.

---

[12] *See* Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2376 (3d ed.) (explaining that where "an order of dismissal is reversed, the case ordinarily will proceed as if the motion for dismissal had been denied").

13

**B. Johnson's allegations in this case do not state a claim under the FDCPA, even after *Crawford*.**

For the reasons stated in Midland's motion to dismiss, because its proof of claim was filed with the bankruptcy court and not communicated *to the debtor*, Johnson lacks standing to challenge it under 15 U.S.C. § 1692e, a point that the Eleventh Circuit did not address in *Crawford*. Moreover, even if Johnson could assert a claim under § 1692e, the deceptive capacity of Midland's proof of claim should be judged under the "competent attorney" or "competent trustee" standard, as opposed to that of the "least sophisticated consumer." And in any event, even under the least sophisticated consumer standard, Midland's proof of claim was objectively not false, and Johnson does not contend otherwise; was not deceptive, since it plainly and prominently stated the date of Johnson's last transaction; and was objectively not misleading, because it truthfully disclosed all of the information necessary for the trustee, or Johnson's attorney, or even Johnson herself to determine whether it was time-barred.

As for her claim under § 1692f, well-settled case law interpreting the FDCPA provides that, "in the absence of a threat of litigation or actual litigation, no violation of the FDCPA has occurred when a debt collector attempts to collect on a potentially time-barred debt that is otherwise valid." *Freyermuth v. Credit Bureau Servs.*, 248 F.3d 767, 771 (8th Cir. 2001). And "[t]he statutory purpose of the FDCPA, as well as common sense, leads . . . to [the] conclu[sion] that there is

nothing 'unfair' or 'unconscionable' about filing a proof of claim in a bankruptcy case even if it could be construed as a debt collection activity." *In re Chaussee*, 399 B.R. 225, 245 (B.A.P. 9th Cir. 2008) (Jury, J., concurring).[13] Accordingly, Johnson also fails to state a claim under § 1692f because Midland's proof of claim was neither an unfair nor unconscionable means of collecting the underlying debt.[14]

## Conclusion

For the reasons stated above and in its Motion to Dismiss, Midland respectfully requests that the Court dismiss Johnson's complaint with prejudice.

Respectfully submitted this 12th day of November, 2014.

>  */s/ Jason B. Tompkins*
>  One of the Attorneys for Defendant Midland Funding, LLC

---

[13] *See also id.* at 244-45("Moreover, I do not see how furnishing the type of information contained in a proof of claim would, in any sense, be an 'unfair or unconscionable means' of debt collection when filed in the bankruptcy court. . . . While the proof of claim may have been based on a debt that debtor did not owe, it does not logically follow that whenever a debt collector files a proof of claim in bankruptcy proceedings that this constitutes an unlawful attempt to collect a debt in violation of FDCPA.").

[14] Johnson also implies in a footnote that because a suit to collect the debt would be time-barred under Alabama law, that Midland's proof of claim "would also violate the specific prohibition set out in Section 1692f(1) against the collection of any amount not 'expressly authorized by the agreement creating the debt or permitted by law.'" (Doc. 21, at 7, n.6) (quoting 15 U.S.C. 1692f(1)). At the same time, however, Johnson does not dispute that, under Alabama law, the expiration of the statute of limitations extinguishes Midland's *remedy* of litigation, not its *right* to collect a debt that she admittedly still owes.

**COUNSEL FOR DEFENDANT MIDLAND FUNDING, LLC:**

Jason B. Tompkins
Chase T. Espy
BALCH & BINGHAM LLP
P. O. Box 306
Birmingham, Alabama 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of November 2014, I have filed the above and foregoing via the CM/ECF electronic filing system, which will electronically serve the following counsel of record:

| | |
|---|---|
| Earl P. Underwood , Jr. | Kenneth J. Riemer |
| 21 South Section Street | P. O. Box 1206 |
| Fairhope, AL 36532 | Mobile, AL 36633 |
| 251-990-5558 | (251) 432-9212 |
| Fax: 251-990-0626 | Fax: (251) 990-0626 |
| Email: epunderwood@gmail.com | Email: kriemer01@gmail.com |

*/s/ Jason B. Tompkins*
Of Counsel