# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| ALEDIA Q. JOHNSON, etc., | ) | |
| | ) | |
| Plaintiff, | ) | **PUBLISH** |
| | ) | |
| v. | ) CIVIL ACTION  14-0322-WS-C | |
| | ) | |
| MIDLAND FUNDING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the Court on the defendant's motion to dismiss.  (Doc. 17).  The parties have filed briefs in support of their respective positions, (Docs. 17, 21, 22, 25, 27), and the motion is ripe for resolution.  After careful consideration, the Court concludes the motion is due to be granted.

## BACKGROUND

According to the complaint, (Doc. 1), the plaintiff filed for bankruptcy relief under Chapter 13.  The defendant then filed a proof of claim that disclosed on its face that the claim is barred by the statute of limitations.  The complaint alleges that this filing violated the Fair Debt Collection Practices Act ("the Act"), in that it was deceptive and misleading for purposes of 15 U.S.C. § 1692e and unfair and unconscionable for purposes of 15 U.S.C. § 1692f.

In *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254 (11th Cir. 2014), the Eleventh Circuit "consider[ed] whether a proof of claim to collect a stale debt in Chapter 13 bankruptcy violates" the Act and "answer[ed] this question affirmatively." *Id*. at 1256-57.  The defendant argues that dismissal nevertheless is required on two grounds:  (1)  "[a]ny claim Johnson might otherwise assert under the [Act] in this case is precluded by the Bankruptcy Code"; and (2) "[e]ven

if Johnson's claim were not precluded by the Bankruptcy Code, she still fails to state a claim under the [Act]." (Doc. 17 at 5, 16).

## DISCUSSION

"There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). The Court's review on this motion to dismiss is similarly limited to those arguments the parties have expressly advanced. *E.g., Jurich v. Compass Marine, Inc.*, 908 F. Supp. 2d 1225, 1228 (S.D. Ala. 2012).

The defendant's second argument is essentially an extended and futile effort to deny and thereby avoid the ruling in *Crawford*. The only serious question presented by the defendant's motion is whether tension between the Bankruptcy Code ("the Code") and the Act precludes the plaintiff from pursuing her claim under the Act.[1] That issue was not presented in *Crawford*, and the Eleventh Circuit expressly declined to consider it. 758 F.3d at 1262.

"The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *accord J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred International, Inc.*, 534 U.S. 124, 143-44 (2001). There are various ways of measuring and resolving the tension between federal statutes, but the parties agree to use the test requiring "irreconcilable conflict" between the provisions. (Doc. 17 at 4-5, 7, 16; Doc. 21 at 3, 7-12, 16, 18, 21; Doc. 22 at 1, 3, 7, 9).

---

[1] Litigants and courts sometimes use the word "preemption" in describing such an issue. Preemption, however, is properly used when assessing the impact of a federal statute on a state law; preclusion is the correct term when two federal statutes are involved. *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2236 (2014).

Before deciding whether the Act and the Code are in irreconcilable conflict, the Court must determine what each provides. The Act, as construed by *Crawford*, provides that it is unlawful for a debt collector to file a proof of claim in a Chapter 13 proceeding knowing the claim to be time-barred.[2] As discussed below, the Code provides that it is permissible for a creditor to file such a proof of claim if expiration of the limitations period does not extinguish the creditor's right to payment under applicable state law.

"A creditor … may file a proof of claim." 11 U.S.C. § 501(a). Pursuant to this provision, "[w]hen a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim …." *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443, 449 (2007).

"In this title … 'claim' means … right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured …." 11 U.S.C. § 101(5)(A). Thus, if a creditor has a right to payment he has a claim, and if he has a claim he is entitled to file a proof of claim.

"The basic federal rule in bankruptcy is that state law governs the substance of claims …." *Travelers*, 549 U.S. at 450 (internal quotes omitted). This flows naturally from the proposition that "property interests are created and defined by state law, and unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." *Id*. at 451 (internal quotes omitted). "Accordingly, when the Bankruptcy Code uses the word 'claim' – which the Code itself defines as a 'right to payment,' [citation omitted] – it is usually referring to a right to payment recognized under state law." *Id*. Thus, if a

---

[2] "Given our precedent, we must examine whether LVNV's conduct – filing and trying to enforce in court a claim known to be time-barred – would" violate the Act. 758 F.3d at 1259. "[W]e hold that LVNV's conduct violated the FDCPA's plain language …." *Id*. at 1262.

creditor has a right to payment (i.e., a property interest) recognized by applicable state law despite the lapse of the limitations period, he has a claim for such time-barred debt and is entitled to file a proof of claim as to such time-barred debt.

The plaintiff identifies Alabama as providing the applicable state law. (Doc. 21 at 1 n.1). In Alabama, a creditor's right to payment is not eliminated by a limitations bar. *Ex parte Liberty National Life Insurance Co.*, 825 So. 2d 758, 765 (Ala. 2007) ("[A] statute of limitations generally is procedural and extinguishes the remedy rather than the right ….") (internal quotes omitted).[3] Thus, the defendant has a right to payment of its time-barred debt and a consequent entitlement to file a proof of claim as to the time-barred debt.

The plaintiff, while ignoring the Court's analysis, insists that the Code does not "condon[e] … the filing of proofs of claim on patently unenforceable debt." (Doc. 21 at 8). According to the plaintiff, Section 101(5) requires a "*bona fide* 'right to payment,'" which she defines as a "legally enforceable right." (*Id*. at 2, 17).[4] The defendant scoffs that the plaintiff has pulled this definition of a "right" from a legal dictionary. (Doc. 22 at 8). And so she has, but the Supreme Court itself, in construing Section 101(5), has declared that "[t]he plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation …."

---

[3] *Accord Ex parte HealthSouth Corp.*, 974 So. 2d 288, 296 (Ala. 2007) ("When the statute of limitations expires, it does not extinguish the cause of action; instead, it makes the remedy unavailable."); *Pinigis v. Regions Bank*, 942 So. 2d 841, 848 (Ala. 2006) ("The whole theory of a nonclaim statute is to create a defense broader in its operation than the statute of limitations, not only barring remedies, but extinguishing debts and liabilities.") (emphasis and internal quotes omitted).

[4] The plaintiff also argues that the Code "discourages" the filing of stale proofs of claim in that the claim form requires the claimant to declare under penalty of perjury that the debtor owes the creditor money and that the claim is warranted by existing law or a nonfrivolous argument for its alteration, and in that the form warns that false claims can be penalized. (Doc. 21 at 17-18, 19). Even if the discouragement of a permitted practice had any relevance, these requirements do not discourage the filing of proofs of claim on time-barred debt like the plaintiff's since, as discussed above, under Alabama law a creditor is still owed the debt after the statute of limitations expires.

*Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990).[5]

Mr. Black[6] provides seven definitions of a "right," but the plaintiff quotes only one part of one definition. The entirety of that (fourth) definition reads as follows: "A legally enforceable claim that another will do or will not do a given act; a recognized and protected interest the violation of which is a wrong <a breach of duty that infringes one's right>." Black's Law Dictionary 1436 (9th ed. 2009). It is plain from this definition that "legally enforceable" means only that the law "recognize[s] and protect[s]" the interest giving rise to the claim, that is, that the claim is not a mere moral obligation or idiosyncratic opinion with which the law is not concerned. This dichotomy is made even clearer by Mr. Black's second definition, which defines a "right" as "[s]omething that is due to a person by just claim, legal guarantee, *or* moral principle …." *Id*. (emphasis added).[7] It is equally plain that a right is "legally enforceable" in this sense whether or not the defendant can successfully assert an affirmative defense such as the statute of

---

[5] *Accord Federal Communications Commission v. NextWave Personal Communications Inc.*, 537 U.S. 293, 302-03 (2003); *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998); *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991).

[6] Henry Campbell Black, father of the law dictionary bearing his name.

[7] Courts have often juxtaposed "moral" and "legally enforceable" obligations. *E.g., Kern v. Kern*, 360 So. 2d 482, 485 (Fla. App. 1978) ("Although a parent may suffer a moral obligation to assist children in acquiring an advanced education, we find nothing in either the jurisprudence or the statutes of this state which makes such a moral obligation legally enforceable."); *Koike v. Board of Water Supply*, 352 P.2d 835, 839 (Haw. 1960) ("The essence of a moral obligation is that it arises out of a state of facts appealing to a universal sense of justice and fairness, though, upon such facts no legally enforceable claim can be based."); *Bellamy v. Oklahoma Farm Mortgage Co.*, 278 S.W.2d 180, 182 (Tex. App. 1925) (nothing prevented the defendants from "convert[ing] into a legally enforceable obligation that which they were already morally bound to pay").

limitations.[8] So long as the law recognizes and protects the interest at issue (here, the interest in being repaid a contractual debt), the resulting claim is legally enforceable even if the law's protection is not limitless in time or scope.

There is no indication that the Supreme Court has used the term "enforceable obligation" in any more restrictive sense than Mr. Black has used the parallel term "legally enforceable claim." The question presented in *Davenport* was whether restitution obligations imposed in state criminal proceedings are "debts" as defined by 11 U.S.C. § 101(11). Because "debt" means "liability on a claim," *id*., the Court looked to the definition of "claim." The petitioners argued in part that a restitution order could not represent a "right to payment" because the obligation could not be enforced in civil proceedings but only by threatening the probationer with revocation. 495 U.S. at 558-59. The Supreme Court did not regard this difference in "enforcement mechanism" as significant. *Id*. at 559-60. Its statement that a right to payment is "nothing more nor less than an enforceable obligation" signifies only that a right to payment is legally enforceable however the law chooses to enforce it – by civil litigation or otherwise. The *Davenport* Court's reliance on legislative history to show that the Code "contemplates that all *legal obligations* of the debtor … will be able to be dealt with in the bankruptcy case," *id*. at 558 (emphasis added, internal quotes omitted), further reflects that it used "enforceable obligation" only in Mr. Black's sense of an interest recognized and protected by law. Moreover, *Davenport* expressly recognizes that the Code's definitions of "claim" and "debt" are the "broadest possible," *id*. at 558, 564 (internal quotes omitted), and a definition of the embedded term "right to payment" that excludes obligations exposed to a limitations defense patently is not the broadest possible. Finally, to read *Davenport* as the plaintiff desires would directly contradict *Travelers*' pronouncement that the parameters of a right to

---

[8] As is generally true elsewhere, in Alabama the statute of limitations is an affirmative defense, not an element of the plaintiff's claim. *E.g., Special Assets, L.L.C. v. Chase Home Finance, L.L.C.*, 991 So. 2d 668, 675 (Ala. 2007).

payment are defined by state law, not federal law. In short, *Davenport* cannot plausibly be read for the proposition that a "right to payment" as contemplated by Section 101(5) ceases to exist the moment the statute of limitations expires.[9]

There are yet other reasons to conclude that the Code permits a creditor to file a proof of claim knowing the claim is time-barred under Alabama or similar law. For example, Section 101(5) defines a claim to include a right to payment that is "contingent" or "unmatured." Even though the Code expressly recognizes that such claims are unenforceable (because no right to payment has yet ripened),[10] it includes them in the definition of a claim. That is, the Code expressly contemplates the filing of proofs of claim on presently unenforceable claims.[11]

This is underscored by the Code's procedure for addressing proofs of claim. If no party in interest objects, the claim is allowed as a matter of course. 11 U.S.C. § 502(a). The objections a party in interest may raise include that the

---

[9] Nor do later Supreme Court cases quoting *Davenport*'s "enforceable obligation" language support such a proposition. *NextWave* quoted *Davenport* only to support its conclusion that "a debt is a debt, even when the obligation to pay it is also a regulatory condition." 537 U.S. at 302-03. *Cohen* quoted *Davenport* only to support its conclusion that "[a]n award of treble damages is an 'enforceable obligation' of the debtor, and the creditor has a corresponding 'right to payment.'" 523 U.S. at 218. *Johnson* quoted *Davenport* only to support its conclusion that "a mortgage interest that survives the discharge of a debtor's personal liability is a 'claim' within the terms of § 101(5)." 501 U.S. at 83.

The Eleventh Circuit appears to have quoted this portion of *Davenport* just once, in support of its conclusion that "a judgment requiring payment of punitive and compensatory damages for a common cause of fraudulent conduct is a 'debt' as defined by the Bankruptcy Code in §523(a)." *In re: St. Laurent*, 991 F.2d 672, 679 (11th Cir. 1993). Nothing in *St. Laurent* suggests the restrictive definition proposed by the plaintiff.

[10] 11 U.S.C. § 502(b)(1) (upon objection, the Bankruptcy Court "shall allow such claim … except to the extent that [inter alia] such claim is unenforceable … for a reason other than because such claim is contingent or unmatured").

[11] *E.g., Bendall v. Lancer Management Group, LLC*, 523 Fed. Appx. 554, 558 (11th Cir. 2013) ("Contingent rights to payment need not be currently enforceable in order to constitute a claim.").

7

"claim is unenforceable," *id*. § 502(b)(1), which would be unnecessary if proofs of claim on unenforceable claims were prohibited to begin with. Since one ground of unenforceability is the expiration of the limitations period,[12] the Code clearly contemplates the filing of proofs of claim on claims barred by the statute of limitations, with such claims to be allowed without objection or disallowed upon objection.

Finally, the plaintiff's restrictive definition of a claim is at odds with practice under the prior bankruptcy code, and she offers no sound basis for believing Congress rejected that practice when it enacted the Code. "In 1978, after almost 10 years of study and investigation, Congress enacted a comprehensive revision of the bankruptcy laws," known as the Bankruptcy Act of 1978. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 53 (1982). Among the many changes worked by the 1978 revision was the adoption of the current definition of a "claim." *In re: Keeler*, 440 B.R. 354, 361 (Bankr. E.D. Pa. 2009). Previously, "a claim had to be both proved and allowed in order for a creditor to receive a distribution." *Id*.[13] Under the previous regime, "it has been held in a number of cases that a debt may be provable, even where the defense of the statute of limitations is good as against an action brought in the state courts …." *In re: Kuffler*, 153 F. 667, 668 (E.D.N.Y. 1907); *accord Hargadine-McKittrick Dry Goods Co. v. Hudson*, 122 F. 232, 235 (8th Cir. 1903) ("Debts are not the less provable, within the meaning of the bankrupt act, because

---

[12] "Section 502(b)(1) … is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers*, 549 U.S. at 550. Legion are the cases disallowing claims under Section 502(b)(1) based on a limitations defense. Recent examples include *In re: Paterno*, 2015 WL 735959 (9th Cir. BAP 2015); *In re: Lewis*, 517 B.R. 615, 622 (Bankr. E.D. Va. 2014); and *In re: Archdiocese of Milwaukee*, 515 B.R. 579, 585-86 (Bankr. E.D. Wis. 2014); *In re: Mazyck*, 521 B.R. 726, 730-31 (Bankr. D.S.C. 2014); *In re: Washington*, 2014 WL 5714586 at *13 (Bankr. D.N.J. 2014); *In re: Morgan*, 2014 WL 5449491 at *2 (Bankr. E.D. Tenn. 2014).

[13] More precisely, the debt had to be proved and the claim on the debt allowed.

the statute of limitations may be successfully pleaded against their allowance."); *In re: Solomons*, 2 F. Supp. 572, 573 (S.D.N.Y. 1932) ("[T]he defense of the statute of limitations cannot be deemed properly to be an obstacle to the allowance [of a claim] unless it be interposed by some one ….").  The staleness of a debt did not affect its provability because "[t]he statute of limitations is a defense, and not a part of the affirmative claim."  *In re: Kuffler*, 153 F. at 668.  The debt was owed, and could thus be proved, even though ultimate allowance of the claim might be denied if the limitations defense were properly raised.

"We will not read the [1978] Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Davenport*, 495 U.S. at 563.  "The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific," and "[t]he Court has followed this rule with particular care in construing the scope of bankruptcy codifications."  *Kelly v. Robinson*, 479 U.S. 36 47 (1986) (internal quotes omitted); *accord In re: St. Laurent,* 991 F.2d 672, 679-80 (11th Cir. 1993).  The plaintiff has identified nothing in Section 101(5) or its legislative history suggesting that Congress, in adopting the "broadest possible" definition of "claim," intended to overturn the longstanding rule that a limitations defense becomes relevant only after proofs of claim are filed, when the Bankruptcy Court (previously the referee) considers whether to allow an asserted claim.  Any such argument would appear to be untenable.[14]

---

[14] Because the statute of limitations is an affirmative defense that is lost if not properly asserted, there is a sense in which a time-barred claim is legally enforceable when the proof of claim is filed, subject to becoming unenforceable only later, if and when the defense is raised.  Under this view, filing a proof of claim on a time-barred claim would be proper under the Code even accepting the plaintiff's position that the claim must be enforceable when the proof of claim is filed.  Because, as discussed in text, the Court rejects the plaintiff's position, it is unnecessary to consider this possibility.

"Based upon the broad definition of a claim found in section 101(5)(A), and based upon the provisions of section 501, which affords all entities that hold claims the statutory entitlement to file a proof of claim, numerous courts have upheld the right of an entity to file a proof of claim, even if that claim is clearly barred by the applicable statute of limitations." *Keeler*, 440 B.R. at 363. For the reasons set forth above, the Court adds its voice to this chorus.[15]

In summary, except where expiration of the limitations period extinguishes the debt under applicable state law, the Code permits creditors to file proofs of claim in Chapter 13 proceedings on debts known to be time-barred, while the Act prohibits debt collectors from engaging in such conduct.[16] There is thus an obvious tension between the Act and the Code. The questions become whether that tension rises to the level of an irreconcilable conflict and, if so, how that conflict is to be resolved.

---

[15] Other choristers include *United States v. Moriarty*, 8 F.3d 329, 334 (6th Cir. 1993) ("[U]sing the Bankruptcy Code's definition of the term 'claim' as a guide to interpret the term 'claim' in the federal priority statute, we conclude that the United States continues to have a 'right of payment,' and thus a 'claim,' against the debtor even though the United States is barred by the statute of limitations from bringing an action against the debtor for money damages."); *B-Real, LLC v. Rogers*, 405 B.R. 428, 431 (M.D. La. 2009) ("[T]he Bankruptcy Code itself contemplates a creditor filing a proof of claim on a time-barred debt and the Bankruptcy Court disallowing such claim after objection from the debtor."); *In re: Claudio*, 463 B.R. 190, 195 (Bankr. D. Mass. 2012) ("[A] proof of claim based on a stale claim will be deemed allowed under § 501(a) unless the affirmative defense is raised in a filed objection.") (internal quotes omitted); *In re: Andrews*, 394 B.R. 384, 388 (Bankr. E.D.N.C. 2008); *In re: Williams*, 392 B.R. 882, 886 (Bankr. M.D. Fla. 2008) ("The creditor's right to file a claim is not impacted by whether the statute of limitations has run ….); *In re: Varona*, 388 B.R. 705, 723-24 (Bankr. E.D. Va. 2008); and *In re: Simpson*, 2008 WL 4216317 at *2 (Bankr. N.D. Ala. 2008) ("The claims allowance process of the Bankruptcy Code contemplates that time-barred claims may be filed and expressly preserves the statute of limitations as a defense and a ground for disallowance of the claim.").

[16] A "creditor" is defined in pertinent part as "[an] entity that has a claim against the debtor." 11 U.S.C. § 101(10)(A). The plaintiff admits that the defendant purchased the subject debt, (Doc. 1 at 2), and the discussion in text establishes that the defendant has a "claim" despite the running of the limitations period. The defendant is thus a creditor under the Code.

The answer to the second question is straightforward. "'Where provisions in the two acts are in irreconcilable conflict, the later act to the extent of the conflict constitutes an implied repeal of the other one.'" *EC Term of Years Trust v. United States*, 550 U.S. 429, 435 (2007) (quoting *Posadas v. National City Bank*, 296 U.S. 497, 503 (1936)). The Act has not been amended in any relevant respect since its 1977 enactment, while the Code dates from no earlier than 1978. Thus, and as the plaintiff acknowledges, in case of irreconcilable conflict the Act must yield to the Code.[17]

The first question requires more discussion. The plaintiff insists there is no irreconcilable conflict because the defendant "can easily comply with both the Bankruptcy Code and the [Act] by simply refraining from filing proofs of claim premised on time-barred debts." (Doc. 21 at 3; *accord id*. at 12 n.10, 16). The defendant argues that the two are in irreconcilable conflict "because [the Code] expressly prescribes the conduct allegedly prohibited by the [Act]." (Doc. 17 at 3).

The plaintiff relies for her position on *Randolph v. IMBS, Inc*., 368 F.3d 726 (7th Cir. 2004). In *Randolph*, the defendant sent the debtor two dunning letters after the debtor's Chapter 13 petition had been filed and her plan confirmed.[18] The Act prohibits false representations that a debtor is required to pay a debt immediately, and it also prohibits writing the debtor directly when she is represented by counsel, while the Code prohibits debt-collection attempts in

_____

[17] The Supreme Court has occasionally suggested that the later-enacted statute must or should also be the more specific statute. *E.g., Smith v. Robinson*, 468 U.S. 992, 1024 (1984). The parties do not invoke this line of authority and, in any event, the Code is plainly the more specific in the only respects relevant to this lawsuit. While the Code specifically addresses the filing of proofs of claim on stale debts, the provisions of the Act on which the plaintiff relies do not reference proofs of claim at all but merely prohibit in general terms the use of deceptive, misleading, unfair or unconscionable means of collecting debts.

[18] Because the three consolidated appeals in *Randolph* were "similar in material respects," the Court "use[d] one as an illustration." 368 F.3d at 728.

violation of the automatic stay. Although the defendant's conduct was thus prohibited under both regimes, the debtor's remedies were different, with the Act imposing liability on a strict-liability basis (subject to a due-care defense) and the Code restricting the recovery of damages to willful violations of the stay. *Id*. at 728-29. In this context, the Seventh Circuit ruled that the statutes were not in irreconcilable conflict because "it is easy to enforce both statutes, and any debt collector can comply with both simultaneously." *Id*. at 730; *see also id*. at 731 ("Overlapping statutes do not repeal one another by implication; as long as people can comply with both, then courts can enforce both.").

*Randolph* addresses the situation where both statutes impose obligations on a party.[19] In that context, it makes sense to frame the inquiry as whether the party can "comply" with both statutes, because each statute requires compliance with its corresponding obligation, and if the party can comply with its obligation under one statute only by failing to comply with its obligation under the other, the obligations are in irreconcilable conflict. *E.g., Department of Transportation v. Public Citizen*, 541 U.S. 752, 766-67 (2004) ("If it were truly impossible for [the agency] to comply with both § 350 and § 13902(a)(1) [both of which imposed "mandates"], then we would be presented with an irreconcilable conflict of laws.").[20]

The ability to "comply" with both statutes, however, is not the proper test when, as here, the case does not concern a comparison of the obligations imposed

---

[19] As does *Simon v. FIA Card Services, N.A.*, 732 F.3d 259, 279 (3rd Cir. 2013), which the plaintiff also cites in support of her position. (Doc. 21 at 12 n.10). And as do the dozen or so lower court decisions cited by the plaintiff as following *Randolph* – all of which involve obligations under the Act and under the Code's automatic stay and/or discharge injunction provisions. (*Id*. at 9-11).

[20] *See also Simon*, 732 F.3d at 280 ("If, as the Simons argue, a § 1692e(11) claim could arise from the fact that the … letters and subpoenas did not include the 'mini-*Miranda*' notice, the [defendant] would violate the automatic stay provision of the Bankruptcy Code by including the notice or violate the [Act] by not including the notice. This conflict precludes allowing a claim under § 1692e(11) ….").

by one statute with the obligations imposed by another but rather a comparison of the obligations imposed by one statute with the rights conferred by another. In such a case, to speak of mutual compliance is nonsensical, because one does not "comply" with a right, one exercises it. The plaintiff is not urging that the defendant "comply" with both the Act and the Code, she is insisting that the defendant comply with the Act by surrendering its right under the Code to file a proof of claim on a time-barred debt. This is not the vindication of both statutes, it is the negation of one by the enforcement of the other. A clearer demonstration of irreconcilable conflict would be difficult to imagine.[21]

The plaintiff's other primary authority is *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014). In *POM Wonderful*, the label on the defendant's juice blend product prominently displayed the words "pomegranate blueberry" even though those juices represented only 0.5% of the product. The plaintiff sued under the Lanham Act for unfair competition in the form of a false or misleading product description. The defendant argued that the plaintiff's suit was precluded by the Food, Drug and Cosmetic Act ("FDCA"), the implementing regulations of which apparently permitted use of the label. *Id*. at 2233-34. The Supreme Court disagreed, ruling that the Lanham Act (which "protects commercial interests against unfair competition") and the FDCA (which "protects public health and safety") serve to "complement each other in the federal regulation of misleading labels." *Id*. at 2238, 2241. The plaintiff argues that the

---

[21] Several sister courts in the Seventh Circuit, relying on *Randolph*, have determined that the Code does not preclude an action under the Act based on filing a proof of claim on a time-barred debt. *E.g., Patrick v. Pyod, LLC*, 39 F. Supp. 3d 1032, 1034-35 (S.D. Ind. 2014); *In re: LaGrone*, __ B.R. __, 2015 WL 273373 at *4 (Bankr. N.D. Ill. 2015); *In re: Brimmage*, 523 B.R. 134, 139 (Bankr. N.D. Ill. 2015); *Robinson v. eCast Settlement Corp*., 2015 WL 494626 at *2 (N.D. Ill. 2015). These decisions generally rely on the defendant's ability to "comply" with the Code by declining to file a proof of claim. As set forth in text, the Court concludes that this is not a proper expression of the test for irreconcilable conflict in the present context. Nothing in these opinions undermines the Court's conclusion.

contradictory treatment by the Act and the Code of proofs of claim on stale debts does not show irreconcilable conflict because, as in *POM Wonderful*, the statutory schemes "serve two separate purposes." (Doc. 21 at 16).

The decision in *POM Wonderful* does not stand for the proposition that there can be no irreconcilable conflict between statutes when they serve different purposes. Nor could it, since it did not address the "high standard" of "irreconcilable conflict" to begin with but considered only how to "reconcile or harmonize" the two statutes. 134 S.Ct. at 2237.[22] Even ignoring this threshold difficulty, the plaintiff has not explained, and the Court cannot apprehend, how two mutually exclusive statutory provisions can be rendered compatible simply by noting that Congress had different purposes in mind when enacting them. Suppose one statute authorizes all citizens to wear white shirts and another forbids all citizens to wear white shirts. Can it seriously be contended that these provisions are reconcilable because the purpose of one is to promote good taste and the purpose of the other is to promote good health? The difference in purpose may explain why the conflict exists, but it does not remove the conflict.

It is of course true that legislative history may eliminate what would otherwise be an irreconcilable conflict by revealing an intent to restrict the meaning or scope of a facially clear statutory provision. *E.g., Watt v. Alaska*, 451 U.S. 259, 266, 273 (1981) ("declin[ing] to read the statutes as being in irreconcilable conflict without seeking to ascertain the actual intent of Congress" and finding from legislative history that Congress intended the new term "minerals," which "by its literal terms applies to the facts before us," to have a narrower meaning compatible with the existing statute). But the plaintiff has pointed to no indication that Congress intended the permission it granted in the

---

[22] The Supreme Court found it unnecessary to assess the existence vel non of irreconcilable conflict because the defendant could not prevail even under the lower standard. *Id*. The plaintiff's insistence that *POM Wonderful* was analyzed and decided under irreconcilable conflict principles, (Doc. 21 at 15), is simply incorrect.

Code to file proofs of claim on stale debts to be qualified or withdrawn when the creditor is a debt collector. Simply pointing to *Randolph*'s description of the Act as "regulating how debt collectors interact with debtors" and of the Code's "principal subjects" as "what assets are made available to which creditors and how much is left for debtors," 368 F.3d at 731 – which is all the plaintiff offers, (Doc. 21 at 16) – reflects no congressional intent for the Code to mean something less than what it plainly says.

Statutory provisions are in irreconcilable conflict when "there is a positive repugnancy between them or … they cannot mutually coexist." *Radzanower v. Touche Ross & Co*., 426 U.S. 148, 155 (1976); *accord J.E.M. Ag Supply*, 534 U.S. at 143. Thus, for example, when two different limitations periods purport to apply to the same situation, they are in irreconcilable conflict. *EC Term of Years Trust*, 550 U.S. at 435 ("We simply cannot reconcile the 9-month limitations period for a wrongful levy claim under § 7426(a)(1) with the notion that the same challenge would be open under § 1346(a)(1) for up to four years."). Here, as long as state law preserves a right to payment after the limitations period expires, the Code authorizes filing a proof of claim on a debt known to be stale, while the Act (as construed by *Crawford*) prohibits that precise practice. Because, as to creditors under the Code that are also debt collectors under the Act, those contradictory provisions cannot possibly be given effect simultaneously, the provisions are positively repugnant and cannot mutually coexist. They are thus in irreconcilable conflict.[23] And because there is irreconcilable conflict, the Act must give way to the Code.[24]

---

[23] In *United States v. Devall*, 704 F.2d 1513 (11th Cir. 1983), "[t]he Social Security Act's anti-assignment provision purport[ed] to prohibit the assignment of social security benefits with very limited exceptions, while the Bankruptcy Code purport[ed] to authorize direct income deductions from the Social Security Administration." *Id*. at 1515. Because "the conflict between the Bankruptcy Code and the Social Security Act is apparent and cannot be reconciled without limiting one to accommodate the other," the Court "conclude[d] that the provision of the later-enacted Bankruptcy Reform Act must

**CONCLUSION**

For the reasons set forth above, the defendant's motion to dismiss is **granted**. This action is **dismissed with prejudice**. Judgment shall be entered accordingly by separate order.

DONE and ORDERED this 23rd day of March, 2015.


                  s/ WILLIAM H. STEELE
                  CHIEF UNITED STATES DISTRICT JUDGE

---

prevail over the more general anti-assignment provision of the Social Security Act." *Id*. at 1515, 1518. The present situation parallels that in *Devall*, and with like result.

[24] The defendant has also cited and discussed authorities that, largely as a matter of policy, would preclude any action under the Act that so much as touches upon matters also addressed by the Code (such as the discharge injunction), and others that would permit actions on the periphery of bankruptcy but preclude those implicating conduct "inside" the bankruptcy system. Because the plaintiff's action is clearly barred due to the irreconcilable conflict between the specific provisions of the Act and Code at issue, the Court need not consider these more sweeping approaches.