IN THE UNITED STATES DISTRICT COURT FOR
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALEDIA Q. JOHNSON, a/k/a ALEDIA Hill Individually and on behalf of a class of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ENCORE CAPITAL GROUP, INC., MIDLAND FUNDING, LLC and MIDLAND CREDIT MANAGEMENT, INC.,<br><br>Defendants. | CLASS ACTION COMPLAINT<br><br>CASE NO. 14-00322-WS-C |

## FIRST AMENDED CLASS ACTION COMPLAINT

**COMES NOW** the Plaintiff, Aledia Johnson (hereafter the "Plaintiff") and, pursuant to Rule 15(a)(1)(b) amends her Complaint as follows:

### JURISDICTION AND VENUE

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 because the complaint contains claims that arise under the laws of the United States. Jurisdiction is also provided by 15 U.S.C. § 1692k.

2. Venue is proper in this District because the acts and transactions occurred here and all the parties reside or transact business here.

### PRELIMINARY STATEMENT

3. This is an action for actual damages, statutory damages, costs and attorney's fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Plaintiff brings this action individually and on behalf of all others similarly situated to recover damages by the Defendants' violations of the FDCPA. The violating actions addressed in this Complaint stem

from attempts to collect time barred debts through the filing of a proof of claim in Plaintiff's Chapter 13 bankruptcy case.

## PARTIES

4. Plaintiff is a natural person and adult resident of Mobile County, Alabama. She is a "consumer" as defined by 15 U.S.C. § 1692a(3).

5. Defendant Midland Funding, LLC ("Midland Funding") is a Delaware limited liability company which does business within the State of Alabama. Its principal place of business is in San Diego, California.

6. Midland Funding's regular course of business is collection of consumer debt, which it purchases post-default. According to its website, Midland Funding is one of the nation's biggest buyers of unpaid debt.[1] Midland purchases accounts with an unpaid balance where consumers have gone at least 180 days without making a payment, or paid less than the minimum monthly payment. Midland Funding is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

7. Midland Credit Management, Inc. ("MCM") is a Kansas corporation which also does business within the State of Alabama. MCM is affiliated with Midland Funding and also has its principal place of business in San Diego, California.

8. MCM's regular course of business is collection of defaulted consumer debt. According to its website, "Midland Credit Management is a subsidiary of Encore Capital Group, a leader in the consumer debt buying and recovery industry."[2]

9. MCM is engaged in the business of collecting or attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another, or collect debts it owns which it acquired after default. This is principal area of business. As such, MCM is a "debt

---
[1] See http://www.midlandcreditonline.com/who-is-mcm/midland-funding-llc/
[2] See https://www.midlandcreditonline.com/who-is-mcm/our-partners/

2

collector" within the meaning of 15 U.S.C. § 1692a(6).

10. MCM is an affiliate of Midland Funding. At all times relevant herein, MCM collected debts on behalf of Midland Funding, the holder of the debts at issue. The proof of claim filed in Plaintiff's bankruptcy and described herein was filed by Midland Credit as agent for Midland Funding.

11. Encore Capital Group, Inc., ("Encore") is a business entity organized under the laws of Delaware with its principal place of business at 3111 Camino Del Rio North, Suite 1300, San Diego, California.

12. Encore is the parent company of MCM and Midland Funding. Encore is not a passive holding company. It actively engages in the business of debt buying and collections through its instrumentalities, including Midland Funding and MCM, which it owns and the activities of which it controls. Encore is engaged in the business of collecting or attempting to collect, directly or indirectly, debts owed or due or asserted to be owed or due another, or acquired after default, as its principal business. Encore is a "debt collector" as that term is defined 15 U.S.C. § 1692a(6).

13. Encore state in its filings with the Securities & Exchange Commission ("SEC"), that: "We [Encore and its subsidiaries] are a leader in consumer debt management and recovery solutions... We purchase portfolios of defaulted consumer receivable at deep discounts to face value and use a variety of operational channels to maximize our collections from these portfolios." Encore also states that it devises the "collection strategies" used by its subsidiaries, which include Midland Funding and MCM. Under the heading, 'Collection Approach," Encore, stated, "[w]e expand and build upon the insight developed during our purchase process when developing our account collection strategies for portfolios we have acquired. Our proprietary consumer-level

collectability analysis is the primary determinant of whether an account is actively serviced post-purchase. Generally, we pursue collection activities on only a fraction of the accounts we purchase, through one or more of our collection channels. The channel identification process is analogous to a decision tree where we first differentiate those consumers who we believe are unable to pay from those who we believe are able to pay. ... It is our practice to assess each consumer's willingness to pay through analytics, phone calls and/or letters... However, the majority of consumers we contact ignore our calls and our letters and we must then make the decision about whether to pursue collections through legal action... Throughout our ownership period, we periodically refine this analysis to help determine the most effective collection strategy to pursue for each account." [3]

14. The "collection strategies" devised by Encore and implemented through its subsidiaries, including Midland Funding and MCM, include the filing proofs of claims in bankruptcy proceedings on debt Encore and its subsidiaries knew or should have known were time-barred.

15. Encore has devised a structure and corporate arrangement whereby Midland Funding and MCM engage in collections activity on Encore's behalf, as its agents. In fact, Encore says on its website "[i]f you are one of our consumers, you probably know us as Midland Credit Management (or MCM). Midland Credit Management, a subsidiary of Encore Capital Group, works with consumers to resolve past-due obligations. MCM services accounts after the originating creditor has charged-off the account. . ... If you have heard from MCM, your obligation to a lender is now your obligation to Midland Funding, LLC. Please give us a call at 1-877-240-2377 or visit online to learn about your options or discuss your account." https://www.encorecapital.com/consumers

---

[3] See Form 10-K by Encore with the SEC for year ending Dec. 31, 2012, found at http://www.sec.gov/Archives/edgar/data/1084961/000119312513055397/d443977d10k.htm#toc443977_2 .

16. Encore and its subsidiaries, including Midland Funding and MCM, also regularly collect "receivables subject to bankruptcy proceedings." In 2013 Encore stated in its 10-K filing the following:

> Encore Capital Group, Inc. ("Encore"), through its subsidiaries (collectively, the "Company"), is an international specialty finance company providing debt recovery solutions for consumers and property owners across a broad range of financial assets. The Company purchases portfolios of defaulted consumer receivables at deep discounts to face value and manages them by working with individuals as they repay their obligations and work toward financial recovery. Defaulted receivables are consumers' unpaid financial commitments to credit originators, including banks, credit unions, consumer finance companies, commercial retailers, and telecommunication companies. Defaulted receivables may also include receivables subject to bankruptcy proceedings. Encore, through certain subsidiaries, is a market leader in portfolio purchasing and recovery in the United States.[4]

17. Each of the defendants is regularly engaged in the practice of debt collection as defined by the FDCPA and such practice is the principal business of each defendant. Defendants send collection letters and place collection calls as a regular part of their business. Each defendant collects or seeks to collect consumer debt which is either owned by another or which has been acquired after the debt was considered by the creditor to be in default.

18. Each defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

19. Each defendant regularly files or causes the filing of proof of claim forms seeking to collect time barred debts incurred by natural persons, for personal, family, or household use. Defendant Encore engages in this practice through its instrumentalities, including Midland and MCM.

---

[4] See Form 10-K filed by Encore with the SEC for year ending Dec. 31, 2013, found at http://www.sec.gov/cgi-bin/viewer?action=view&cik=1084961&accession_number=0001193125-14-067404&xbrl_type=v# .

## FACTUAL ALLEGATIONS

26.     On March 24, 2014, Plaintiff filed for relief under Chapter 13 of Title 11 U.S. Code in the Bankruptcy Court for the Southern District of Alabama (Case Number 14-00917).

27.     On May 29, 2014, Defendants filed or caused to be filed a proof of claim against Plaintiff in her bankruptcy case seeking to collect the sum of $1,879.71.

28.     The claim states the original creditor as "Fingerhut Credit Advantage" and that the date of the last transaction on the account was stated as May 28, 2003. The claim was filed by "Midland Credit Management, Inc., as agent for Midland Funding LLC." (A copy of the proof of claim is attached hereto as Exhibit One.).

29.     No documentation was attached to the claim.

30.     The claim is, on its face, barred by the applicable statute of limitations. The claim states that the account was charged off on January 5, 2004 and that the last date of payment was May 28, 2003.

31.     The alleged debt described in the proof of claim filed by Defendants is a "debt" as defined in 15 U.S.C. § 1692(a)(5).

32.     Legal enforcement of the alleged debt addressed in the proof of claim filed by Defendants is barred by the applicable statute of limitations. Defendants knew or reasonably should have known when they filed the proof of claim that the debt was time-barred and legally unenforceable.

33.     Defendants knowingly buy time-barred debt at a deep discount. Defendants then engage in collection practices, including the filing of proofs of claim in bankruptcy, in the hope and expectation that inaction on the part of many debtors will result in payment on this otherwise unenforceable debt. Because the price paid for the stale debt is deeply discounted, the profit

realized from this practice is enhanced. Upon information and belief, the price defendants pay for debt, including the account addressed herein, is determined at least in part by the age of the account. The older the debt, the deeper the discount. Therefore, stale debt provides a larger potential profit for debt buyers. Filing proofs of claim on time-barred debt is one method used by debt buyers, including Defendants, to realize this enhanced profit.

34. A proof of claim filed in bankruptcy is presumptively valid and, therefore, constitutes a representation that the debt is enforceable. With respect to proofs of claim filed on stale debt, that representation is false and misleading. By cloaking an unenforceable debt within a presumptively valid proof of claim, the filer represents to the debtor, trustee and the bankruptcy court that the debt is enforceable or, at the very least, that the filer/creditor has a good faith belief that the debt is enforceable. Not only is this false and misleading, it also unfairly and automatically shifts the burden to consumers/debtors to determine whether or not the limitations period has run. Defendants engage in a widespread practice of filing these proofs of claim in the hope and expectation that many debtors will not object to the claim, therefore entitling Defendants to payment on otherwise unenforceable debts.

35. The filing of proofs of claim on stale debt forces consumers to take affirmative action to avoid payment of an enforceable debt. This places the consumer is the same position as a consumer sued outside the bankruptcy court on a stale debt. Even where the unenforceable status of the debt is detected by the consumer, the expenditure of energy and resources by the debtor and/or the bankruptcy trustee is necessary in order to avoid payment of the unenforceable debt. Moreover, due to the passage of time, filing a proofs of claim on stale debt heightens the probability that the consumer would no longer have personal records regarding the debt, thereby

circumventing the purposes behind statutes of limitation, including the debtor's right to be free of stale claims.

36. Congress, through the FDCPA, has made the following findings:

a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy;

b) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts; and

c) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce;

15 U.S.C. § 1692(a)-(d).

37. The stated purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 16929(e).

38. As part of Congress' desire to protect consumers against abusive debt collection practices, the FDCPA prohibits the use of false, deceptive, and misleading collection practices. 15 U.S.C. § 1692e. In addition to this general prohibition, Section 1692e enumerates a non-exhaustive list of prohibited acts, including the false representation of the character or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

39. The FDCPA also prohibits the use of any unfair or unconscionable means to collect or attempt to collect any debt. In addition to this general prohibition, the act specifically prohibits the collection or attempted collection of any amount not authorized or permitted by law. 15 U.S.C. § 1692f(1).

40. The filing of proofs of claim on debt which the filer knows or should know is time-barred constitutes a false, deceptive and misleading representation made in connection with the collection of a debt. That practice is also a false, deceptive and misleading means used to collect a consumer debt. That practice is, therefore, a violation of 15 U.S.C. § 1692e.

41. The filing of a proof of claim on time-barred debt also constitutes a false representation of the legal status of the debt in that it falsely communicates that the debt is enforceable. This is a violation of 15 U.S.C. § 1692e(2)(A).

42. The filing of proofs of claim on debt which the filer knows or should know is time-barred also constitutes an unfair and/or unconscionable means to collect or attempt to collect a consumer debt and, therefore, is a violation of 15 U.S.C. § 1692f.

43. The filing of proofs of claim on time-barred debt is also the collection or attempted collection of amounts not permitted by law and is, therefore, a violation of 15 U.S.C. § 1692f(1).

44. Filing a proof of claim in a Chapter 13 bankruptcy constitutes a "representation" and "means" within the meaning of 15 U.S.C. 1692e.

45. Filing a proof of claim in a Chapter 13 bankruptcy also constitutes a "means" within the meaning of 15 U.S.C. § 1692f.

46. The filing of the above-described proofs of claim in Plaintiff's bankruptcy constitutes violations of 15 U.S.C. § 1692e, 1692e(2)(A), 1692f and 1692f(1).

47. Through the FDCPA, Congress has designated the right to not be subject to abusive debt collection practices to be a legally protected interest. The invasion of this legally protected interest creates a legally cognizable injury sufficient to provide standing to bring suit in federal court.

48. As a result of Defendants' prohibited actions, Plaintiff has suffered injury in fact and actual harm. She was forced to take action to prevent the payment on a legally unenforceable debt. She has suffered an invasion of a legally protected interest, namely the right not to be subject to abusive debt collection practices, including the use of false, deceptive or misleading representations or means or the use of unfair or unconscionable means in an attempt to collect a debt.

49. The protected interest invaded by the Defendants' actions has a close relationship to the interests traditionally protected by public policy and the common law, as reflected in the common law actions of malicious prosecution and abuse of process, as well as the protection against the filing of frivolous lawsuits.

50. The invasion of Plaintiff's legally protected interest is concrete, particularized, actual or imminent and not conjectural or hypothetical.

## COUNT I
### (FDCPA Violation)

51. Plaintiff realleges and incorporates all of the preceding paragraphs as if fully set out herein.

52. As a result of the violations of the FDCPA, defendants are liable to Plaintiff for actual and statutory damages, plus costs and attorney's fees.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered against each of

the defendants for the following:

A. Actual and statutory damages pursuant to 15 U.S.C. § 1692k;

B. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k; and

C. Such other and further relief as this Court deems just and proper, the premises considered.

## COUNT II
### (CLASS ACTION ALLEGATIONS)

53. Plaintiff realleges and adopts all of the relevant foregoing paragraphs contained in this complaint.

54. Plaintiff prays that this court will certify this action as a class action as provided by Federal Rules of Civil Procedure, Rule 23(b)(3), and realleges and incorporates by reference the allegations and counts of complaint on behalf of all those persons hereinafter described belonging to the class or any sub-class therein.

55. Plaintiff brings this action on behalf of herself and all members of a class defined as all consumers who:

a) Filed for relief under Chapter 13 of Title 11 of the U.S. Code within the states of Alabama, Florida or Georgia; and

b) In whose bankruptcy case either of the Defendants, at any time after July 14, 2013, filed one or more proofs of claim attempting to collect a debt the legal enforcement of which, at the time of filing, was barred by the applicable limitations period.

56. The class is so numerous, that joinder of all members is impractical. Plaintiff further avers that there are questions of law or fact common to the class relating to the conduct of the defendants regarding said claims. Plaintiff further avers that their claims or defenses, as representative of the class, are typical of the class. Plaintiff further avers that in a representative

capacity she will fairly and adequately protect the interest of the class.

57. Each class member has, or has been subjected to collection activity in violation of the FDCPA because the defendants have or have attempted to collect time barred debt from class members.

58. Names and addresses of class members are presently unknown to plaintiff, but can be readily ascertained from the defendants' business records.

59. Common or similar issues of law and fact predominate over individual issues. These common issues include, but are not limited to the following:

    a. Whether Defendants violated the FDCPA by filing a Proof of Claim related to a time barred debt;

    b. What is the appropriate remedy for Defendants' violations of the FDCPA?

60. Proof of common facts and legal doctrines by the representative plaintiff will determine the claims of each member of the class.

61. This class action proceeding will provide a practical basis for the determination of all interest of the parties, prevent inconsistent adjudications, maximize judicial economy, and is superior to all other available methods of fair and efficient adjudications of the controversy.

62. The named representative's claims are typical and representative of the class.

63. It is and was the practice of Defendants to attempt debt collection that was in violation of the FDCPA as stated in the above.

**WHEREFORE**, Plaintiff prays that this court will certify this as a class action, and award the members of the class herein the remedies provided for in 15 U.S.C. § 1692k(a)(2)(B).

Respectfully Submitted,

Kenneth J. Riemer (RIEMK8712)
Earl P. Underwood, Jr.
Underwood & Riemer, P.C.
21 South Section Street
Fairhope, AL 36532
Telephone: 251-990-5558
Email: kjr@alaconsumerlaw.com

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS MATTER.**

Kenneth J. Riemer (RIEMK8712)

### CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the counsel of record.

Kenneth J. Riemer (RIEMK8712)
Respectfully Submitted,

**DEFENDANTS WILL BE SERVED BY CERTIFIED MAIL AT:**

Encore Capital Group, Inc.
3111 Camino Del Rio North, Suite 1300
San Diego, CA 92108

Midland Credit Management, Inc.
c/o CSC Lawyers Incorporating Svc Inc.
150 South Perry Street
Montgomery, AL 36104